FILED'10 APR 13 10:44USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

Plaintiff,

v.

HENRY VILLA,

Defendant.

No. CR 08-30006-PA

**ORDER**

**PANNER, J.**

A jury found defendant Henry Villa ("Villa") guilty of conspiracy to manufacture marijuana and manufacture of marijuana. Villa now moves for a new trial. See Fed. R. Crim. P. 33(a). For the reasons that follow, I deny Villa's Motion For New Trial [#209].

**BACKGROUND**

On February 1, 2008, Villa was indicted for Conspiracy to Manufacture Marijuana and Manufacture of Marijuana. Prior to trial, Villa made several requests for evidence under Fed. R. Crim. P. 16, 18 U.S.C. § 3500 (the "Jencks Act"), and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194(1963).

On October 29, 2009, the government filed a motion for a protective order, alerting the court that the government possessed additional evidence relating to Margaret Hammit ("Hammit"). In that motion, the government informed the court that due to concerns regarding Hammit's safety, the government would not disclose Jencks Act materials relating to Hammit's testimony until after Hammit testified. The court granted the motion. On November 12, 2009, upon Villa's motion, the court ordered the government to furnish Jencks Act materials to Villa.

Trial began on Monday, November 16, 2009. Drug Enforcement Agency Special Agent Ron Wright ("Wright") testified on the first day of trial. As Wright took the stand, the government provided Villa with Wright's grand jury testimony. Vichean Bun ("Bun") also testified on the first day of trial. Bun was arrested at the grow site, and earlier pleaded guilty to charges relating to the marijuana grow. Wright's grand jury testimony revealed that in an interrogation during Bun's arrest at the grow site, Bun failed to identify Villa. Bun later decided to cooperate with

the government in return for a reduced sentence. Bun subsequently identified Villa as being involved in the grow. On cross examination, Villa utilized Wright's grand jury testimony to impeach Bun regarding Bun's initial failure to identify Villa.

Hammit also testified at the trial. As Hammit took the stand, the government provided Villa with: 1) the government's motion for protective order discussed above; 2) the government's motion for appointment of stand-by counsel for Hammit; 3) Wright's September 14, 2009 report detailing a September 11, 2009 interview with Hammit; 4) Wright's November 13, 2009 memorandum regarding an immunity agreement with Hammit; and 5) a government memorandum regarding payment of $500 to Hammit for costs related to safety planning. During the September 11, 2009 interview, Hammit revealed that she wished to testify against Villa but outlined concerns regarding her safety. Prior to that interview, Hammit claimed she knew little about either the grow or Villa's involvement in the grow. In light of the information Villa received as Hammit took the stand, the court, upon Villa's request, ordered Hammit to return the following day for cross examination. Villa cross-examined Hammit the following day.

On November 18, 2009, the jury returned guilty verdicts on both counts. Villa subsequently moved for a new trial.

///

///

**DISCUSSION**

On a defendant's motion, the district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The court has discretion in deciding whether to grant a motion for a new trial. See United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000).

Villa argues the interest of justice require a new trial due to violations of Rule 16, the Jencks Act, Brady, and the Confrontation Clause.

1. Alleged Brady Violations.

Brady requires that the prosecution disclose certain exculpatory and impeachment evidence to the defendant. U.S. v. Alvarez, 358 F.3d 1194, 1206 (9th Cir. 2004)(citing Brady, 373 U.S. at 87, 83 S.Ct. at 1194; U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985)). Offers of immunity are subject to disclosure under Brady as the offers are relevant to the credibility of the witness. Giglio v. United States, 405 U.S. 150, 154-55, 92 S.Ct. 763, 766 (1972). Brady violations require a new trial if the violation(s) deprived the defendant of a fair trial. United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399 (1976). Suppressed evidence deprives the defendant of a fair trial when "its suppression undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678, 105 S.Ct. at 3381. In determining whether a new trial is warranted, the court considers

the cumulative effect of all of the violations. Kyles v. Whitley, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 1567 (1995).

As stated above, as Wright took the stand, the government provided Villa with Wright's grand jury testimony revealing Bun's failure to identify Villa at the time of Bun's arrest. Villa subsequently cross-examined Bun regarding his initial failure to identify Villa.

Defendant cannot show that any potential Brady violation had any impact on the outcome of the trial. The jury here knew Bun failed to identify Villa during Bun's initial interrogation. The jury also heard about the impact of Bun's subsequent identification of Villa on the amount of time Bun faced in prison. In other words, this jury was fully informed and the result of the trial would not have changed had Villa received the information before trial. See United States v. Alvarez, 358 F.3d 1194, 1211 (9th Cir. 2004)(concluding that production of agent's interview notes of witness would not have affected the outcome of the trial because jury was fully aware of discrepancies between witness's pretrial and trial testimony); see also U.S. v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988)(even assuming evidence was exculpatory and material, no due process violation under Brady when the evidence was not disclosed until after government's case-in-chief because defendant had "substantial opportunity to use the documents and to cure any prejudice caused by the delayed

disclosure"). The disclosure of Wright's grand jury testimony during trial, which Villa argues demands a new trial, was not prejudicial. See Alvarez, 358 F.3d at 1211; see Gordon, 844 F.2d at 1403.

Villa also argues the government violated Brady by not disclosing, until Hammit took the stand, information that Hammit received immunity from the government and a $500 payment for costs related to safety planning. As stated above, Hammit alleged Villa threatened her, and the government feared for Hammit's safety. The court granted the government's notice of additional Jencks Act materials and motion for a protective order regarding Hammit.

Like the impeachment evidence regarding Bun's failure to identify Villa, Villa received any Brady material relating to Hammit in time to utilize the information to cross examine Hammit. See Alvarez, 358 F.3d at 1211. Additionally, the court granted Villa's request to delay Hammit's cross examination until the day after direct. Because the disclosure occurred early enough to allow Villa to use the information, Villa cannot demonstrate prejudice resulting from any alleged violation. Id.; see Gordon, 844 F.2d at 1403.

To the extent Villa argues that Hammit's statements, detailed in Wright's report, should have been disclosed earlier, Villa's argument fails. First, as with Bunn's failure to

initially identify Villa and Hammit's offer of immunity, Wright's report was disclosed in time for Villa to use the statements to impeach Hammit. Thus, Villa cannot demonstrate prejudice under Brady from the disclosure during trial. See Alvarez, 358 F.3d at 1211; see Gordon, 844 F.2d at 1403. Second, the court granted the government's motion for protective order under seal regarding Wright's report. Finally, "[w]hen the defendant seeks evidence which qualifies as both Jencks Act and Brady material, the Jencks Act standards control." Alvarez, 358 F.3d at 1211 (quoting United States v. Jones, 612 F.2d 453, 455 (9th Cir. 1979). As described below, Hammit's statements qualified as Jencks Act materials.

The government disclosed all Brady material to Villa. The disclosures during trial, viewed collectively, do not undermine confidence in the outcome of the trial. Thus, Villa is not entitled to a new trial under Brady. Bagley, 473 U.S. at 678, 105 S.Ct. at 3381.

2. Alleged Jencks Act Violations.

The Jencks Act provides that:

> (a) [. . .] no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination. . .
>
> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to

> produce any statement. . .of the witness in the possession of the United States <u>which relates to the subject matter as to which the witness has testified</u>. . . .

18 U.S.C. § 3500 (emphasis added).

Defendant argues that because the government failed to disclose Agent Wright's report concerning Hammit until Hammit testified (after Wright testified), a new trial is warranted. However, Wright's report did not relate to the subject matter as to which Wright testified. The report instead dealt with the subject matter of Hammit's testimony. Wright's report detailed Hammit's knowledge of the grow and threats Hammit alleged Villa made to her. Wright's testimony did not deal with Hammit's knowledge of the grow or the alleged threats. Therefore, the government had no obligation to provide Wright's report until Hammit testified. 18 U.S.C. § 3500(b).

Villa's argument that the government violated the court's order, five days prior to trial, to disclose Jencks Act materials fails because the court granted the government's motion for a protective order regarding Hammit. Additionally, there was no way to effectively protect Hammit by redacting information. Finally, the court's November 12, 2009 order stated "[t]he Government shall furnish Defendant with any Jencks Act materials in the possession of, or reasonably available to, the Government." (Order, 2.) Less than one week later, the Government fully complied with the order. Villa received the

report in time to impeach both Wright - present at the prosecution table during the entire trial - and Hammit, and any potential violation of the court's order was harmless.

3. Alleged Rule 16 Violations.

Relevant to Villa's argument here, Fed. R. Crim. P. 16(a)(1)(B) requires that the government disclose, upon defendant's request, any relevant written or recorded statement by the defendant if the statement is within the governments possession or control and the government's attorney knows, or should know, that the statement exists. Fed. R. Crim. P. 16(a)(1)(E) requires the government permit the defendant to inspect any document within the government's control that is material to preparing the defense or that the government intends to use during its case-in-chief. Fed. R. Crim. P. 16(a)(2) states that except as provided in Rule 16(a)(1), the government does not have a duty to disclose internal documents made by the government attorney or other government agent in connection with investigating or prosecuting the case at issue. Additionally, discovery of any statements made by prospective government witnesses is governed not by Rule 16, but by the Jencks Act. Rule 16(a)(2); see U.S. v. Walk, 533 F.2d 417, 418-19 (9th Cir. 1975)[1].

///

[1]At the time of Walk, Rule 16(a)(2) was numbered 16(b).

As stated above, as Hammit took the stand for direct examination, the government provided Villa with, among other documents, Wright's report detailing an interview with Hammit in which Hammit stated Villa threatened her to prevent Hammit from cooperating with investigators.

Villa argues that under Fed. R. Crim. P. 16(a)(1)(B), Wright's report was discoverable because the report contains Villa's recorded statements. Villa's argument is meritless. Wright's report does not contain recorded statements of Villa, but recorded statements of Hammit reporting her recollection of Villa's prior statements. U.S. v. Safavian, 233 F.R.D. 205, 206 (D.C. 2006). In other words, the report is not discoverable under Rule 16(a)(1)(B) because "the connection between the defendant and the written statements is too attenuated for the statements to be considered written statements made by the defendant." Walk, 533 F.2d at 418.

Additionally, the statements at issue are subject to the Jencks Act as Hammit was a prospective government witness. Id. at 418-19. As noted above, Rule 16 does not authorize discovery of statements of prospective government witnesses except as provided in the Jencks Act. Rule 16(a)(2); Walk, 533 F.2d at 418-19. Under the Jencks Act, Hammit's statements were not discoverable until after Hammit testified. Walk, 533 F.2d at 418-19. As stated above, the government provided Villa with

Wright's report as Hammit took the stand for direct examination.

Villa's argument that the report was discoverable under Rule 16(a)(1)(E) centers on the fact that under the plain language of Rule 16(a)(2), the government had a duty to permit Villa to inspect the report because the report was in the government's possession and used in its case-in-chief. Rule 16(a)(2) limits discovery of government work product and statements made by prospective government witnesses "[e]xcept as Rule 16(a)(1) provides otherwise. . ." As stated above, Fed. R. Crim. P. 16(a)(1)(E) requires the government permit the defendant to inspect any document within the government's control that is material to preparing the defense or that the government intends to use during its case-in-chief.

Villa's argument fails because although "a plain reading of the text would lead to the conclusion that all materials meeting the parameters of Rule 16(a)(1)(E) must be produced[,]" the Ninth Circuit has clarified that Rule 16 contains a "scrivener's error." U.S. v. Fort, 472 F.3d 1106, 1110 (9th Cir. 2007)(noting as "persuasive" the analysis in U.S. v. Randolph, 224 F.R.D. 503 (N.D. Al, 2004) detailing "scrivener's error" in Rule 16(a)(1)(E)). Thus, regardless of the "plain reading of the text," Rule 16(a)(2) does indeed provide an exception to the requirements under Rule 16(a)(1)(E). Fort, 472 F.3d at 1110. Therefore, the disclosure of Wright's report and memorandum as

Hammit took the stand did not violate Rule 16(a)(1)(E). Id.

4. Alleged Confrontation Clause Violations.

Villa argues his right to conduct an effective cross-examination under the Confrontation Clause was violated when the government did not disclose - until after the trial began - Wright's: grand jury testimony; report detailing Hammit's knowledge of the grow; and memorandum detailing the offer of immunity to Hammit. Villa argues the disclosures during trial prevented him from effectively cross-examining Bun, Hammit, and Wright.

This argument fails because Villa received the information in time to impeach Bun with his failure to initially identify Villa. Additionally, in light of the new information, Villa received an extra day to prepare for Hammit's cross examination. Finally, although Wright's report and memorandum regarding Hammit were not disclosed until after he finished testifying, the report and memorandum did not deal with the subject matter of Wright's testimony. Additionally, Wright was present for the entire trial, where he sat at the prosecution's table. If Villa needed to call Wright based on newly discovered information, Villa was perfectly free to do so. Villa chose not to re-call Wright, presumably because Wright's report and memorandum dealt with the subject matter of Hammit's testimony, and did not relate to Wright's own testimony.

**CONCLUSION**

The interest of justice does not require a new trial. Defendant's Motion For New Trial (#209) is DENIED.

It is so ordered.

DATED this 13 day of April, 2010.

Owen M. Panner

OWEN M. PANNER
U.S. DISTRICT JUDGE